IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE SEARCH/SEIZURE OF:** | ) | |
| | ) | |
| 1) HTC CELLPHONE WITH BLUE CASE; | ) | Magistrate No . 20-673 |
| | ) | [UNDER SEAL] |
| | ) | |
| 2) BLACK-COLORED IPHONE WITH A BROKEN SCREEN; | ) ) | Magistrate No . 20-674 [UNDER SEAL] |
| | ) | |
| 3) PHONE WITH PINK-COLORED CASE AND A BROKEN SCREEN; | ) ) | Magistrate No . 20-675 [UNDER SEAL] |
| | ) | |
| 4) TCL BLACK-COLORED PHONE; | ) ) | Magistrate No . 20-676 [UNDER SEAL] |
| | ) | |
| 5) BLACK-COLORED IPHONE WITH A BLACK OTTERBOX CASE; | ) ) | Magistrate No . 20-677 [UNDER SEAL] |
| | ) | |
| 6) WHITE AND SILVER-COLORED IPHONE, CONTAINING FCC ID: BCG-E3091A; | ) ) | Magistrate No . 20-678 [UNDER SEAL] |
| | ) | |
| 7) BLACK AND SILVER-COLORED IPHONE, CONTAINING FCC ID: BDG-E2816A; AND | ) ) | Magistrate No . 20-679 [UNDER SEAL] |
| | ) | |
| 8) A USB THUMB DRIVE, | ) ) | Magistrate No . 20-680 [UNDER SEAL] |
| ALL CURRENTLY IN PSP PITTSBURGH EVIDENCE, WHICH WERE SEIZED ON NOVEMBER 13, 2019. | ) ) ) | |

APPLICATION AND AFFIDAVIT FOR SEARCH WARRANTS

I, Brianna Maria Tetrault, having being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I, BRIANNA MARIA TETRAULT, am a Special Agent of Homeland Security Investigations (HSI) Immigration and Customs Enforcement (ICE), United States Department of Homeland Security. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States, who is empowered by law to conduct investigations of, and make arrests for, controlled substance offenses enumerated in Title 21, United States Code.

2. I am currently assigned to the HSI Pittsburgh Office of the Assistant Special Agent in Charge in the Contraband Smuggling Group and have been so employed since June 2010. As a Special Agent, I am authorized to conduct investigations of alleged violations of Immigration laws and Customs laws, including offenses involving the importation of prohibited items, such as narcotics, under Titles 18, 19, and 21 of the United States Code. While being trained as a Special Agent of the HSI, your affiant has received basic training at the Federal Law Enforcement Training Center located in Glynco, Georgia. Your affiant has participated in a number of narcotics and money laundering investigations, which have resulted in the seizure of illegal drugs and evidence of drug violations, as well as the seizure of assets acquired with drug proceeds. Your affiant has conducted covert surveillance of suspected drug traffickers on numerous occasions, interviewed numerous individuals involved in the drug trafficking trade, participated in a Title III wiretap investigation, participated in the execution of numerous search and arrest warrants, assisted in the arrest of narcotics traffickers, and assisted in the seizure of controlled substances. Based upon the above

2

experience, your affiant is familiar with the modus operandi of persons involved in illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances. Your affiant is aware that persons involved in the illicit distribution of controlled substances routinely attempt to conceal their identities, as well as the location at which drug transactions take place.

3. I previously worked for the Pennsylvania Office of Attorney General, Bureau of Consumer Protection, from June 2006 to May 2010. As a Consumer Protection Agent, I investigated and enforced Pennsylvania Consumer Protection Laws. In 2006, I received a Bachelor of Arts degree in Government and History from Arcadia University in Glenside, Pennsylvania.

4. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses, conducting physical surveillance, consensual monitoring and recording of both telephonic and non-telephonic communications, analyzing pen register data, conducting court-authorized wire and oral interception electronic surveillance, and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

5. This Affidavit is submitted in support of a search warrant for seven cellular telephones and one USB thumb drive, (TARGET DEVICES) which are further described in

ATTACHMENT A. The TARGET DEVICES are associated with an investigation of Jasmine HARDIN and Leon MORRISON, who, as explained below, are believed to be in violation of firearms and narcotics trafficking laws. The TARGET DEVICES were recovered during the execution of a search warrant at the former residence of HARDIN, which she had shared with MORRISON. Accordingly, law enforcement has probable cause to believe that a search of the TARGET DEVICES will produce fruits of, or evidence of, violations of Title 18 United States Code Section 922(g) and Title 21, United States Code Sections 841(a)(1) and 846.

6. Your Affiant has personally participated in the investigation outlined herein. The facts and information contained in this affidavit are based upon my personal participation in this investigation and information provided by other law enforcement officers with The Pennsylvania State Police, who are also involved in this investigation, along with information from Northern Regional Police.

7. This Affidavit is being submitted for the limited and specific purpose of supporting an application for a search warrant. Therefore, your Affiant has not included every fact known to her during the investigation.

8. As explained below, there is probable cause to conclude that evidence of illegal narcotics trafficking and illegal possession of firearms will be found in the TARGET DEVICES, which are the subject of this search warrant.

## SEARCH LOCATION

9. The search location, further described in ATTACHMENT A, are the TARGET DEVICES: **1) HTC cellphone with a blue case, 2) black-colored iPhone with a broken screen, 3) phone with a pink-colored case and a broken screen, 4) TCL black-colored phone, 5) black-colored iPhone with a black Otterbox case, 6) white and silver-colored iPhone, containing FCC IC: BCG-E3091A, 7) black and silver-colored iPhone, containing FCC ID: BCG-E2816A, and 8) a USB thumb drive.**

10. The TARGET DEVICES have been in secure law enforcement custody at PSP Pittsburgh since the time they were recovered (the circumstances of which are explained more fully below). Based on my training and experience, I know that the TARGET DEVICES are in substantially the same state as they were when the devices first came into the possession of law enforcement.

## PROBABLE CAUSE

11. In connection with a separate investigation involving violations of federal law including fraud and narcotics violations, on November 12, 2019, Homeland Security Investigations (HSI) Special Agent (SA) Brianna Tetrault applied for and received a search warrant at Magistrate Number 19.2319, which was read and approved by US Magistrate Judge Patricia Dodge. The search warrant was for the now former residence of Jasmine HARDIN, 613 Highland Avenue, Pitcairn, PA 15140.

5

12. On November 13, 2019, investigators from HSI, Pennsylvania State Police (PSP), The United States Postal Inspection Service (USPIS,) and Pitcairn Police executed the search warrant at approximately 0755 hours.

13. Investigators knocked and announced and knowing that the door was to a second floor apartment, gave the tenants ample amounts of time to come to the door. No one answered the door and investigators breached and made entry. As investigators made it to the second floor, one subject, found to be HARDIN's boyfriend, Leon MORRISON, had attempted to jump out of the second floor window. HARDIN emerged from her bedroom in the rear of the residence. Both subjects were detained without incident. Pitcairn PD queried MORRISON and found that he had a warrant for failing to pay child support. Pitcairn PD transported MORRISON from the scene.

14. During the search of the residence, a Colt .25 caliber handgun, bearing serial number: 277220, was found on the bed. Based on the search and observance of the residence, it appeared as though both subjects shared this bed. Additionally, a flash bang and a grenade were found hidden in a potted plant in the living room. The Colt handgun was also found to be stolen.

15. After the locating of the flash bang and the grenade, your Affiant read Miranda Warnings to HARDIN, in the presence of Group Supervisor Tim Taucher. HARDIN said that she understood her rights and then stated that MORRISON should and would take responsibility for these items. Later in the interview, HARDIN said that MORRISON was responsible for the grenade, flash bang, and the gun.

16.     Since MORRISON had been transported from the scene by Pitcairn Police, it was requested that Pitcairn Police ask MORRISON about the devices recovered from 613 Highland Avenue.  MORRISON was subsequently questioned by Pitcairn Police about these devices and acknowledged to Pitcairn Police Officer Steven Lawson that he took responsibility, specifically mentioning, the grenade, and said he got it from someone.

17.     Also discovered during the search of 613 Highland Avenue were over two hundred gift cards, along with suspected drugs, which have not yet been tested.

18.     All of the TARGET DEVICES were recovered during the search of HARDIN's former residence, in various rooms of the apartment.

19.     A criminal history for MORRISON was reviewed, which shows that MORRISON is a convicted felon and is not lawfully permitted to possess a firearm.

20.     During the search of 613 Highland Avenue, HARDIN provided consent to search her cell phone in order to have it returned to her more quickly.  HARDIN also provided her cell phone number and that of MORRISON.

21.     On January 22, 2020, your Affiant reviewed text messages from HARDIN's phone with the phone number 412-540-0556, which HARDIN had said was used by MORRISON.  Further, a review of the commercially available database Clear, which has proven reliable in past investigations, lists Leon R. MORRISON in the historical information for phone number 412-540-0556.  The most current information, according to Clear, does not list a name.

Your Affiant is also aware that those involved in illicit activities can utilize fictitious names and addresses to insulate themselves from law enforcement detection.

22.     Your Affiant observed a message sent from phone number 412-540-0556 to HARDIN's phone on November 3, 2019, which was just a little over a week before the search of 613 Highland Avenue that read "I sold both of the revolvers for fr you could pick out the little ones which one u want". A little earlier in that conversation, phone number 412-540-0056 sent the message, "I could sell all 3 of these right now fr 6". Based on the review of these messages, your Affiant believes that MORRISON had been in possession of multiple firearms.

23.     On February 19, 2020, your Affiant again encountered Leon MORRISON at 613 Highland Avenue, Pitcairn, while accompanying Northern Regional Police Offices to interview HARDIN for her role in their investigation of an access device fraud case, in which both HARDIN and MORRISON were observed on a store surveillance camera using stolen gift cards. MORRISON was originally on scene and departed. After interviewing HARDIN, investigators asked HARDIN if she would be willing to contact MORRISON to see if he would come back to the residence at 613 Highland Avenue, Pitcairn to speak with investigators regarding his own role in local vehicle break-ins and access device fraud. Your Affiant identified herself to MORRISON over the phone and told him he was not under arrest and did not have to speak with investigators, but that investigators wanted to ask him questions. MORRISON agreed to come back to the residence and speak with investigators. Northern Regional Police asked MORRISON about their investigation. During the interview, your Affiant asked MORRISON if he was

8

responsible for the flash bang that was found in the residence in November, when both he and HARDIN had been present. MORRISON said that he took responsibility for it and the grenade and had bought them. Your Affiant asked if MORRISON was a felon, to which MORRISON said that he was. Your Affiant explained to MORRISON that there was a criminal complaint sitting at the US Attorney's Office, so there may be a warrant pending and he should avoid committing other crimes. MORRISON said that he did not want to provide any additional information such as where he bought the flash bang and the grenade or from whom, but he told investigators that they were all his. HARDIN attempted to prompt additional information from MORRISON, but he said that he wasn't about that [providing information], but would take responsibility. Investigators thanked MORRISON for coming back and departed from the residence.

24. Based on the above information, it is believed that the **TARGET DEVICES** may have been used in the course of purchasing, maintaining, or distributing narcotics and/or firearms.

25. Based on training and experience, and all of the information into this investigation, your Affiant believes that there is information related to the illegal trafficking of narcotics and/or firearms on the **TARGET DEVICES**. Your Affiant respectfully requests that a search warrant be granted for the **TARGET DEVICES**.

## EVIDENCE COMMONLY STORED ON CELL PHONES AND OTHER ELECTRONIC STORAGE DEVICES

26.     Based on my training and experience, I am aware that it is a common practice for drug traffickers who desire to insulate themselves from detection by law enforcement to routinely utilize multiple telephones, counter surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators.  It is not unusual for drug traffickers to initiate or subscribe such phone or phone device services under the names of other real or fictitious people.  Moreover, it is now a very common practice for drug traffickers to utilize all communication features of their telephones, most notably the voice call and text message features, nearly simultaneously to communicate with their co-conspirators.

27.     I am aware that evidence of drug, firearm, and money laundering crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, and photograph and video gallery files. Additionally, with the advancement of cellular phones, specifically "smart phones", one can use their cell phone as a GPS. Locations and addresses can be contained on one's cellular phone.  It should be noted that, with the advance of technology, the distinction between computers and cellular telephones has become less clear.  Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from

## EVIDENCE COMMONLY STORED ON CELL PHONES AND OTHER ELECTRONIC STORAGE DEVICES

26.     Based on my training and experience, I am aware that it is a common practice for drug traffickers who desire to insulate themselves from detection by law enforcement to routinely utilize multiple telephones, counter surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators.  It is not unusual for drug traffickers to initiate or subscribe such phone or phone device services under the names of other real or fictitious people.  Moreover, it is now a very common practice for drug traffickers to utilize all communication features of their telephones, most notably the voice call and text message features, nearly simultaneously to communicate with their co-conspirators.

27.     I am aware that evidence of drug, firearm, and money laundering crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, and photograph and video gallery files. Additionally, with the advancement of cellular phones, specifically "smart phones", one can use their cell phone as a GPS. Locations and addresses can be contained on one's cellular phone.  It should be noted that, with the advance of technology, the distinction between computers and cellular telephones has become less clear.  Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from

## EVIDENCE COMMONLY STORED ON CELL PHONES AND OTHER ELECTRONIC STORAGE DEVICES

26.     Based on my training and experience, I am aware that it is a common practice for drug traffickers who desire to insulate themselves from detection by law enforcement to routinely utilize multiple telephones, counter surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators.  It is not unusual for drug traffickers to initiate or subscribe such phone or phone device services under the names of other real or fictitious people.  Moreover, it is now a very common practice for drug traffickers to utilize all communication features of their telephones, most notably the voice call and text message features, nearly simultaneously to communicate with their co-conspirators.

27.     I am aware that evidence of drug, firearm, and money laundering crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, and photograph and video gallery files. Additionally, with the advancement of cellular phones, specifically "smart phones", one can use their cell phone as a GPS. Locations and addresses can be contained on one's cellular phone.  It should be noted that, with the advance of technology, the distinction between computers and cellular telephones has become less clear.  Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from

many cell phones. In addition, as noted above, those involved in drug trafficking crimes commonly communicate using multiple cellular telephones. Contemporaneous possession of multiple cellular telephones is, therefore, evidence of such trafficking. Moreover, the particular numbers of, and the particular numbers dialed by, particular cellular telephones can be evidence of drug trafficking, particularly in light of the fact that it is a practical necessity that drug traffickers communicate with each other, as well as with their customers and suppliers, by telephone. Such numbers can confirm identities of particular associates and the occurrence of certain events.

28. As with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone or a standard computer, are often saved or stored on the device. Storing this information can be intentional, for example, by saving a text message or a contact or an e-mail. Digital information can also be retained unintentionally. Traces of the path of an electronic communication, an internet search, and the locations of photographs and videos may be automatically stored in many places on a computer or cellular telephone. In addition to electronic communications, a user's internet activities generally leave traces in the web cache and internet history files. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device.

29. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they often can be recovered months or years later using readily available forensic tools. When a person

"deletes" a file on an electronic storage device such as a computer, the data contained in the file often does not actually disappear; rather, that data often remains on the device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on a device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache". The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from an electronic storage device depends less on when the file was sent, downloaded, or viewed than on a particular user's operating system, storage capacity, and habits.

30. I am aware that those who illegally possess drugs sometimes take trophy photographs and videos using their cameras and/or cellular telephones of their drugs, firearms, and proceeds and retain them on those devices. In addition, I am aware that drug traffickers, like law-abiding citizens, sometimes take photographs and videos using their cameras and cellular telephones of themselves with their friends, relatives, and associates and keep the photographs and videos on those devices. When they are taken or retained by drug traffickers, such photographs and videos can be evidence, and can lead to additional evidence, of illegal trafficking activity by identifying the traffickers, contraband, and people who are actively assisting and/or supporting the trafficking activity as well as

12

the locations where they live or where they store their drugs, firearms, proceeds, or paraphernalia.

31. It should be noted that data on electronic communication and/or storage devices is often relevant to a criminal investigation by revealing who used a particular device. In addition, such data can reveal who resided at or who had access to a particular location if, for example, a particular device was found at a particular location (e.g., inside a particular room of a particular residence) and the device contains data demonstrating that it was used by or belonged to a particular person. In that sense, a particular electronic device can be significant indicia linking a particular person to contraband or other criminal activity even if the device itself does not contain the remnants of incriminating communications.

32. Because this investigation is ongoing, it is further respectfully requested that this application and any warrant or order issued thereon be ordered sealed until further notice.

## CONCLUSION

33. Based upon the foregoing, there is probable cause to conclude that, in the Western District of Pennsylvania, HARDIN and MORRISON, were in violation of Title 18 United States Code Section 922(g) and Title 21 United States Code, Sections 841(a)(1) and 846. There is probable cause to believe evidence of these crimes will be found upon searching the TARGET DEVICES.

34. Based upon the foregoing, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the TARGET DEVICES, as described more fully in Attachment A, to seek the items described in Attachment B

The above information is true and correct to the best of my knowledge, information, and belief.

/s/ Brianna M. Tetrault
Brianna M. Tetrault
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me
this 31st day of March 2020.

_____
CYNTHIA REED EDDY
Chief U.S. Magistrate Judge